Karen Ann PARKS, Petitioner,

v.

NORMAN MUNICIPAL HOSPITAL, an own risk insurer, and the Workers' Compensation Court of the State of Oklahoma, Respondents.

No. 60284.

Supreme Court of Oklahoma.

July 24, 1984.

Michael P. Kane, Norman, for petitioner.

H.W. Nichols, Jr., Looney, Nichols, Johnson & Hayes, Oklahoma City, for respondents.

OPALA, Justice:

The principal question presented for our determination concerns the standard to be applied in this court (and in the Court of Appeals) on review of a decision made by a three-judge panel of the Workers' Compensation Court which changed or modified the factual findings of the trial judge.

■ We hold that while the three-judge panel is governed, in its re-examination of the trial judge's factual findings, by the clear-weight-of-the-evidence standard, the Supreme Court or the Court of Appeals, in reviewing the panel-altered factual determinations, must apply the any-competent-evidence test.

The trial judge found that the claimant sustained a compensable injury to her back and awarded her temporary total and permanent partial disability benefits. The three-judge panel of the Workers' Compensation Court reversed that decision. It found that claimant did not sustain an injury arising out of and in the course of her employment. The Court of Appeals reinstated the trial judge's award. It held that the *panel's finding* was unsupported by *any competent evidence.*

We granted certiorari to clarify apparent inconsistencies in the statutory law with respect to the standard of review to be applied when corrective relief in an appellate court (Supreme Court or Court of Appeals) is sought from a decision by a three-judge panel which altered the factual findings of the trial judge. The uncertainty as to the applicable standard of review was no doubt occasioned by the comprehensive revisions of the workers' compensation laws in 1977 [1]—to become effective in 1978—by which the institutional contours of the trial tribunal's intra-court re-examination process came to be redesigned with the abolition of the so-called State Industrial Court *en banc* [2] and its replacement by the three-judge review panels.[3] Inasmuch as we arrive here at a somewhat different assessment from that of the Court of Appeals and we find the trial tribunal's disposition unsuitable for review because it is devoid of a critical, statutorily-mandated finding, the opinion of the appellate court and the order of the three-judge review panel are both vacated for further proceedings not inconsistent with this pronouncement.

I

THE TRIAL TRIBUNAL'S INTRA-COURT REVIEW MECHANISM FOR COMPENSATION CLAIMS *BEFORE* AND *AFTER* JULY 1, 1978

Before examining the impact of the 1977 amendatory act both on intra-court re-ex-

---

1. Okla.Sess.L.1977, Ch. 234 §§ 1–65 at pgs. 587–629. The legislation provided that the act was not to become effective until July 1, 1978. See Sturm, The Workers' Compensation Act of 1977, 3 O.C.U.Law Rev. 1 [Fall 1978] for a further discussion of the 1977 revisions.

2. 85 O.S.1971 § 91(a).

3. Okla.Sess.L.1977, Ch. 234 §§ 61 and 64, at pgs. 628, 629 (85 O.S.Supp.1977 § 3.6).

amination of compensation claims and on review affordable *dehors* the trial tribunal, it is helpful first to explore the framework that was designed for the now-defunct State Industrial Court *en banc*.[4] While extant case law speaks of that corrective process in terms of "appellate" jurisdiction of the Industrial Court and the legislature referred to it as an "appeal",[5] this court early recognized in *Higgs v. State Industrial Commission*[6] that the pre-1978 *en banc* court was to be regarded not as a separate appellate tribunal but as a division of a first-instance court. In *Higgs* this court noted that consideration of a claim before the court *en banc* was no more than a re-examination *in the same forum* of both law and fact questions formerly determined by a single trial judge of the same tribunal. Under the rule pronounced in *Higgs*, every trial judge's decision that is changed in an intra-court re-examination at once loses its viability and stands replaced by the decision that alters it. The latter then becomes the efficacious decision in the case and hence the only one that is reviewable when corrective relief is later sought by proceedings brought in this court.

The intra-court re-examination concept first shaped by us in *Higgs* has some char-acteristics in common with the so-called appeal by trial *de novo*.[7] Both methods (a) afford a re-examination of all the fact and law issues which the initial tribunal was authorized to consider; (b) the later decision upon "appeal" is substituted for the former as the decision of the trial tribunal, and (c) in neither case is the decision under re-examination entitled to *any* presumption of correctness either *before* or *after* the re-examination process is carried to final completion.[8]

The 1977 amendments now in force altered the earlier *en banc* re-examination design in but two aspects: (1) the intra-court authority to re-examine the trial judge's decision now resides in an assigned three-judge panel rather than in the *en banc* tribunal and (2) fact findings of the trial judge are now impervious to *any* alteration unless the panel finds them to be clearly against the weight of the evidence.

◼ The *core* teaching of *Higgs* remains unaffected by the amendatory act of 1977. Now and before, the decision reached on intra-court re-examination replaces by substitution that of the single judge and thereafter, when statutory review *dehors* the trial tribunal is invoked, *it alone* stands as *the* decision of the trial tribunal.[9] Ever

---

4. 85 O.S.1971 § 91(a).

5. *Amerada Petroleum Corporation v. Hester,* 188 Okl. 394, 109 P.2d 820, 821 (1941); see also *Higgs v. State Industrial Commission,* 197 Okl. 281, 170 P.2d 240, 241 (1946).

6. See footnote 5 supra. This concept was also discussed in *Dixon Bros. Lumber & Supply Co. v. Watson,* Okl., 353 P.2d 478, 481 (1960).

7. By our analogy to trial *de novo* we do not intimate that a hearing before the *en banc* court was in fact a trial *de novo*. Unlike the latter, the *en banc* process did not authorize adduction of additional evidence. *Consumers Co-op Ass'n. v. Titus,* 201 Okl. 344, 205 P.2d 1162, 1163 (1949). *En banc* review contemplated only a hearing on questions of law and fact or mixed questions of law and fact to be determined solely *on the record* made before the trial judge. 85 O.S.1971 § 77; *McSperitt v. Sooner Service, Inc.,* Okl., 431 P.2d 443, 445 (1967).

8. *Shelton v. Lambert,* Okl., 399 P.2d 467, 470 (1965). Pre-1969 Oklahoma law affords at least three discrete instances of a *de novo* considera-tion in which substitution of one decision for another could be effected by transfer of the case to another court: (a) from the justice of the peace court to the county or district court, *Cullen v. Sloniker,* 39 Okl. 353, 135 P. 341 (1913); *Faust v. Fenton,* 65 Okl. 243, 166 P. 731 (1917); *Fuss v. Anderson,* 95 Okl. 2, 217 P. 436 (1923); (b) from the probate (county) court to the district court; In *Shailer's Estate,* Okl., 266 P.2d 613 (1954); and (c) from the city auditor or Secretary of State to the Supreme Court in initiative and referendum petition contests, *Shelton v. Lambert,* supra; In re Initiative Petition No. 260, State Question 377, Okl., 298 P.2d 753 (1956).

9. From the inception our case law has employed a substitution analysis for gauging reviewability of compensation orders made upon the intra-court re-examination process. When a trial judge's *terminal* order is vacated in the intra-court review process and the case is remanded for his reconsideration, the decision is treated as *interlocutory* and hence beyond our reach for corrective relief. *Kansas Explorations, Inc. v. Blaine et al.,* 195 Okl. 428, 158 P.2d

since the trial tribunal's intra-court review scheme was first carried into our compensation law,[10] the institutional design was intended not to afford two layers of appellate process with varying standards of review but rather to implement a two-tier decisional system *within* the trial tribunal with but a single appellate remedy in this court (or now in the Court of Appeals).[11]

## II

### STANDARD OF REVIEW UNDER THE PRE-1978 AND POST-1978 WORKERS' COMPENSATION LAWS

#### A.

Consistent with the pre-1977 institutional design, a trial judge's decision was amenable to intra-court review in a forum then called the State Industrial Court *en banc*.[12] The terms of 85 O.S.1971 § 77—now repealed and replaced with 85 O.S.Supp.1977 § 3.6—provided that the *en banc* tribunal, upon review of a trial judge's decision "shall issue such order, decision or award as it may deem proper, just and equitable". When this institution came to an end with the creation of the Workers' Compensation Court, the power of its successor (the three-judge panels)—created by the terms of § 3.6—came to be curtailed. The new institution—the three-judge review panel— is not free to reverse at will a trial judge's finding. No fact issue is presently subject to intra-court re-examination unless the

panel has first determined that a judge's finding upon it "... was against the clear weight of the evidence or contrary to law".[13] It is this restriction that constitutes the *only* significant change effected in the intra-court review process by the 1977 legislation.

█ Because it is limited by the clear-weight-of-the-evidence standard, a panel may reverse or modify the trial judge's findings *only* after these findings have been determined to be lacking in the requisite evidentiary foundation.

#### B.

Pertinent language in 85 O.S.1981 § 26 clearly provides that "[t]he decision of the *Court* [Workers' Compensation Court] shall be final as to all questions of fact, and except as provided in ... [§ 3.6], as to all questions of law". [emphasis added]. This section, *now* and *before* the 1977 amendments, refers to that *decision* of the trial tribunal, whether made by the trial judge or by the panel, which is deemed final. Because in contemplation of law the trial judge's decision, when altered, stands replaced with that of the review panel, there is never more than *one* final decision to be reviewed in the appellate courts.

█ Identical to that in the pre-1977 law,[14] the quoted language in § 26 contin-

907 (1945); *Armour & Co. v. Moore,* 206 Okl. 72, 240 P.2d 1113 (1952); *Anchor Stone & Materials Co. v. Terry,* 207 Okl. 690, 252 P.2d 443 (1953); *Vieth v. Cook,* Okl., 306 P.2d 1110 (1957); *Reid v. Phillips Petroleum Co.,* Okl., 531 P.2d 340, 341 (1975); and *Continental Oil Co. v. Allen,* Okl., 640 P.2d 1358, 1360 (1982).

**10.** Okla.Sess.L.1939, Ch. 72, Article 2 §§ 2 and 3 at pgs. 580–583. These provisions which amended O.S.1931 §§ 13363 and 13384, were later carried into the 1941 compilation as 85 O.S.1941 §§ 29 and 77, subdiv. 9.

**11.** For an analysis of the jeopardy effect in a "two-tiered" system for the trial of minor criminal cases see Justices of *Boston Municipal Court v. Lydon,* — U.S. —, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984).

**12.** 85 O.S.1971 § 91(a).

**13.** The terms of 85 O.S.1981 § 3.6 A provide in pertinent part:
"* * * The Court en banc [three-judge panel] may *reverse or modify* the decision only if it determines that such decision was *against the clear weight of the evidence* or contrary to law. Upon completion of the appeal, the members of the Court sitting en banc shall issue such order, decision or award as is proper, just and equitable. * * * Appeals shall be allowed on a question of law or a question of fact, or a mixed question of law and fact, and shall be determined on the record made before the Judge. * * *" [emphasis added].

**14.** The terms of 85 O.S.1971 § 26 provide in pertinent part:
"* * * The decision of the Commission shall be final as to all questions of fact, and except as provided in ... [§ 29], of this Article, as to all questions of law."

**552**

ues to govern review in this court and in the Court of Appeals. Its text unequivocally and unmistakenly limits appellate reviewing power to questions of law. When the panel-substituted decision is tendered for corrective relief, it must hence be reviewed by applying the law's traditional any-competent-evidence test of correctness.[15] Under this standard our responsibility simply is to canvass the facts, not with an object of weighing conflicting proof in order to determine where the preponderance lies but *only* for the purpose of ascertaining whether the tribunal's decision is supported by competent evidence.[16] By force of § 26, *all* findings of fact made in the trial tribunal's decision under review are conclusive and binding unless they have been ascertained to lack support in competent evidence.[17] It is only in the absence of such support that a trial tribunal's decision may be viewed as erroneous *as a matter of law* and hence subject to appellate vacation.[18]

In conclusion, § 26 governs the standard of review affordable in the Supreme Court or in the Court of Appeals, while § 3.6 controls the trial tribunal's intra-court re-examination process. The latter restricts the panel's power over a trial judge's fact finding to a review upon application of the clear-weight-of-the-evidence standard. When panel-substituted fact findings are under review in an appellate court, the corrective process is confined to issues of law and is hence governed by the any-competent-evidence test.

■ We need not decide here whether the panel-substituted order made in this proceeding is supported by competent evidence. That order must be set aside as *facially defective.* It is devoid of the critical, statutorily-mandated panel determination that the trial judge's finding (that claimant sustained an accidental personal injury on September 19 and 20, 1982) was "against the clear weight of the evidence". In the absence of that finding, the panel order must be regarded as unauthorized by law.[19]

The opinion of the Court of Appeals and the order of the three-judge review panel are accordingly vacated for further proceedings not inconsistent with this pronouncement.

BARNES, C.J., and HODGES, DOOLIN, HARGRAVE and KAUGER, JJ., concur.

SIMMS, V.C.J., and LAVENDER, J., concur in part and dissent in part.

ALMA WILSON, J., dissents.

ALMA WILSON, Justice, dissenting.

I respectfully dissent. With the 1978 amendments to 85 O.S.1971, § 77, now 85 O.S.1981, § 3.6(A), the court *en banc* may reverse or modify the decision of the trial judge only if it determines that such decision was against the clear weight of the evidence or contrary to law. For there to be a meaningful review by either the Court of Appeals or the Supreme Court of the *en banc* decision, particularly where the trial court is reversed on the ground its decision was against the clear weight of the evi-

15. *Merrill v. State Industrial Commission,* Okl., 290 P.2d 1095, 1098 (1955); *Loggins v. Wetumka General Hospital,* Okl., 587 P.2d 455, 457 (1978); *Wilkinson v. McGehee,* Okl., 651 P.2d 671 (1982); *Graves v. Safeway Stores, Inc.,* Okl., 653 P.2d 1236, 1238 (1982); *Thomas v. Keith Hensel Optical Labs,* Okl., 653 P.2d 201, 203 (1982).

16. *Loggins v. Wetumka General Hospital,* supra note 15; *Matter of Death of Sade,* Okl., 649 P.2d 538, 540 (1982); *Graves v. Safeway Stores, Inc.,* supra note 15.

17. *Merrill v. State Industrial Commission,* supra note 15.

18. *Chromalloy-American, Oklahoma Division v. Wright,* Okl., 567 P.2d 71, 73 (1977); *Graves v. Safeway Stores, Inc.,* supra note 15.

19. 85 O.S.1981 § 3.6. See in this connection *Hermetics Switch, Inc. v. Sales,* Okl., 640 P.2d 963, 965 (1982). The Workers' Compensation Court is required to make specific findings of the ultimate facts responsive to the issues. *Butts v. Rose Drilling,* Okl., 304 P.2d 986, 988 (1956). Where findings of fact are too indefinite and uncertain for judicial interpretation, the Supreme Court, on review, will vacate order for further proceedings. *Gleason v. State Industrial Court,* Okl., 413 P.2d 536, 538 (1966).

dence, our task must be to determine whether the court *en banc's* reversal was in compliance with its statutorily prescribed standard of review. Absent compliance with its own standard, its decision would be erroneous as a matter of law.

Review of the decisions of the court *en banc* by the "any competent evidence" standard could lead to this Court's affirming an *en banc's* reversal of the trial court where the court *en banc's* decision was supported by *some* competent evidence, even though the trial court's decision may have been overwhelmingly supported by the evidence. I do not believe that the Legislature intended such an anomalous result.